OPINION OF THE COURT
Wachtler, J.
The plaintiff, a professional model, claims that the defendant used his picture for trade or advertising purposes without his consent, and thus violated his statutory right to privacy (Civil Rights Law, § 51), by publishing a picture of him modeling a “bomber jacket” in a magazine article containing information regarding the approximate price of the jacket, the name of the designer, and the names of three stores where the jacket might be purchased. Plaintiff also claims that the defendant’s conduct violated a common-law right of publicity. The trial court granted summary judgment to the defendant concluding that the article reported a newsworthy event of fashion news, and was not published for trade or advertising purposes. A divided Appellate Division reversed and denied summary judgment finding that factual questions were presented as to whether the defendant had used the plaintiff’s picture for trade purposes and whether the article constituted an advertisement in disguise. The defendant has appealed by leave of the Appellate Division which certified a question as to the correctness of its order.
In the summer of 1981 the plaintiff agreed to model for an article on men’s fall fashions. The photographic session took place on August 11, 1981. The defendant used two of the photographs taken during that session to illustrate an article entitled “Classic Mixes”, which appeared under the heading “Fall Fashions” in the September 7, 1981 issue of New York magazine. Another photograph taken during the session was used, a week earlier, in the August 31,1981 issue of New York magazine, in a column entitled “Best Bets”. That column, a regular feature in the magazine, contains information about new and unusual products and services available in the metropolitan area. One of the items included in the August 31 column was a bomber jacket modeled by the plaintiff. The text above the picture states: “Yes Giorgio — From Giorgio Armani. Based on his now classic turn on the bomber jacket, this cotton-twill version with ‘fun fur’ collar features the same cut at a far lower price — about $225. It’ll be available in the stores next week. — Henry Post Bomber Jacket/Bamey’s, Bergdorf Goodman, Bloomingdale’s.”
*180 It is the plaintiff’s contention that he agreed to model for one article only — the September 7,1981 article on Fall Fashions — and that the defendant violated his rights by publishing his photograph in the August 31 “Best Bets” column.[1] The complaint alleges two causes of action. First the plaintiff claims that the defendant violated his civil rights by using his photograph for trade or advertising purposes without his consent. In his second cause of action the plaintiff claims that the defendant ’s conduct “invaded plaintiff’s right of publicity”. On each cause of action the plaintiff seeks $350,000 in compensatory damages and an equal amount in exemplary damages.
The defendant’s answer asserts several affirmative defenses. The primary defense is that the photograph and article relating to it involve matters of legitimate public interest and concern and thus do not violate the plaintiff’s rights under the Civil Rights Law (§§ 50, 51), or any common-law right of publicity. The defendant also urged that the second cause of action, for invasion of the plaintiff’s right of publicity, does not set forth a claim “separate and distinct” from the first cause of action.
On May 4, 1982 the plaintiff filed a note of issue and statement of readiness indicating that he waived his right to discovery proceedings, that there are no outstanding requests for discovery, and that the case was ready for trial. At the defendant’s request, however, the parties stipulated that the note of issue would be withdrawn to afford the defendant an opportunity to move for summary judgment. In the motion for summary judgment the defendant urged that the complaint should be dismissed because the plaintiff’s photograph was not published for trade or advertising purposes.
In support of the motion the defendant submitted affidavits by two of the editors involved in the publication of the “Best Bets” column of August 31,1981. The affidavits state that the column is a regular news feature of the editorial portion of the magazine, designed to provide readers with information, sometimes *181 including prices, concerning interesting products and services in the New York metropolitan area. They state that such information is provided solely for newsworthy purposes — “advertising concerns” play no part in deciding what to include in “Best Bets” and the magazine receives no payment for any item mentioned in the. column. They further state that the item concerning the bomber jacket was included in the August 31 “Best Bets” column because the fashion editor suggested that it would be of interest to readers of New York magazine.
The plaintiff’s affidavit in opposition to the motion stated: “While it may be that a party whose service or product is included in ‘Best Bets’ does not pay a direct advertising fee to be included, the benefits to the magazine are obtained in an indirect manner. Stores, designers, and retailers featured there have all advertised in New York magazine at other times and places, and giving them this ‘breakout’ feature in the ‘Best Bets’ column acts as barter for such advertising at another time and place.” The plaintiff further stated that the designer and the stores mentioned in the August 31 column had previously advertised in New York magazine and observed that “the publicity benefits in the column to the designer and retail outlets mentioned are evident from a fair reading of the column”.
The trial court granted summary judgment to the defendant concluding, on the basis of the exhibits submitted, that the bomber jacket item was a “newsworthy observation” and was not published for advertising or trade purposes within the contemplation of the statute. The court also held that the inclusion of information concerning the availability of the jacket at certain stores,- which currently advertised in the magazine, was not sufficient to sustain the claim that the item had been published for trade or advertising purposes “without a further showing of benefit to defendant”.
The Appellate Division reversed and denied the defendant’s motion for summary judgment. The majority observed that the September 7 article was published for trade purposes because it was included to increase circulation. Finding that the “form and presentation” of both articles were identical the majority held that a reasonable person could conclude that the August 31 article was also used for trade purposes. “The real question”, the majority stated, “is whether the public interest aspect of the August 31, 1981 article is merely incidental to its commercial purpose”. The majority held that it “is also possible that this article constituted an advertisement in disguise since many of the magazine’s advertisers were mentioned in the copy” (98 *182 AD2d 287,291). One Justice concurred on the ground that a fact question was presented as to whether the plaintiff had consented to the use of his picture in both articles. One Justice dissented for essentially the same reasons as those stated by the trial court.* We now reverse.
Section 50 of the Civil Rights Law prohibits the use of “the name, portrait or picture of any living person” for advertising or trade purposes without the person’s consent and declares a violation of the statute to be a misdemeanor. Section 51 of the statute provides civil remedies, including injunctive relief, compensatory damages and, if the defendant acted knowingly, exemplary damages.
The statutes have their origin in this court’s 1902 decision in Roberson v Rochester Folding Box Co. (171 NY 538). In that case it was held that a young woman whose picture had been used by the defendant on flour advertisements without her consent could not recover for a violation of her right to privacy because no su ch right was recognized at common law. The Legislature responded the following year by amending the Civil Rights Law to establish a statutory “right to privacy” (see Rhodes v Sperry & Hutchinson Co., 193 NY 223, 227, affd sub nom. Sperry & Hutchinson Co. v Rhodes, 220 US 502). Since the adoption of the statutes, this court has repeatedly held that the right of privacy is governed entirely by statute in this State (Arrington v New York Times Co., 55 NY2d 433; Cohen v Hallmark Cards, 45 NY2d 493, 497, n 2; Gautier v Pro-Football, Inc., 304 NY 354, 358).
Section 51 of the Civil Rights Law has been applied in cases, such as the Roberson case, where the picture of a person who has apparently never sought publicity has been used without his or her consent for trade or advertising purposes (see, e.g., Cohen v Herbal Concepts 63 NY2d 379; Flores v Mosler Safe Co., 7 NY2d 276). In such cases it has been noted that the statute serves “to protect the sentiments, thoughts and feelings of an individual” (Flores v Mosler Safe Co., supra, p 280; Cohen v Herbal Concepts, supra).
This history has led some courts to conclude that the statutory right to privacy is limited to the type of case which originally *183 prompted its enactment and thus would not preclude the recognition in this State of a common-law “right of publicity” in cases where the defendant has exploited, without consent, and usually without payment, the name, picture, or portrait of an individual who has consciously sought to establish a publicity value for his personality (see, e.g., Haelan Labs. v Topps Chewing Gum, 202 F2d 866, 868, cert den 346 US 816; Factors Etc. v Pro Arts, 579 F2d 215, cert den 440 US 908; but also see Brinkley v Casablancas, 80 AD2d 428). The statute, however, is not limited to situations where the defendant’s conduct has caused distress to a person who wishes to lead a private life free of all commercial publicity.
By its terms the statute applies to any use of a person’s picture or portrait for advertising or trade purposes whenever the defendant has not obtained the person’s written consent to do so. It would therefore apply, and recently has been held to apply, in cases where the plaintiff generally seeks publicity, or uses his name, portrait, or picture, for commercial purposes but has not given written consent for a particular use (Welch v Mr. Christmas, 57 NY2d 143; cf. Shields v Gross, 58 NY2d 338). Thus where the written consent to use the plaintiff’s name or picture for advertising or trade purposes has expired (Welch v Mr. Christmas, supra) or the defendant has otherwise exceeded the limitations of the consent (Shields v Gross, supra), the plaintiff may seek damages or other relief under the statute, even though he might properly sue for breach of contract. The right which the statute permits the plaintiff to vindicate in such a case may, perhaps, more accurately be described as a right of publicity (Zacchini v Scripps-Howard Broadcasting Co., 433 US 562). In this respect the statute parallels the common-law right of privacy which generally provides remedies for any commercialization of the individual’s personality without his consent (see Prosser, Privacy, 48 Cal L Rev 383, 403; also, see, Cohen v Herbal Concepts, supra; Flores v Mosler Safe Co., supra, pp 280-281; Gautier v Pro-Football, Inc., supra, p 358). Since the “right of publicity” is encompassed under the Civil Rights Law as an aspect of the right of privacy, which, as noted, is exclusively statutory in this State, the plaintiff cannot claim an independent common-law right of publicity.[2]
*184 The only question then is whether the defendant used the plaintiff’s picture for trade or advertising purposes within the meaning of the statute when it published his picture in the “Best Bets” column without his consent.
The statute does not define trade or advertising purposes. However, the courts have consistently held, from the time of its enactment, that these terms should not be construed to apply to publications concerning newsworthy events or matters of public interest (Binns v Vitagraph Co., 210 NY 51,52; accord Humiston v Universal Film Mfg. Co., 189 App Div 467; Lahiri v Daily Mirror, 162 Misc 776; Gautier v Pro-Football, Inc., supra; Booth v Curtis Pub. Co., 15 AD2d 343, affd 11 NY2d 907; Pagan v New York Herald Tribune, 32 AD2d 341, affd 26 NY2d 941; Murray v New York Mag. Co., 27 NY2d 406; Arrington v New York Times Co., supra). The exception reflects Federal and. State constitutional concerns for free dissemination of news and other matters of interest to the public (Arrington v New York Times Co., supra, p 440), but essentially requires an interpretation of the statute to give effect to the legislative intent (Binns v Vitagraph Co., supra, p 52; Humiston v Universal Film Mfg. Co., supra; Lahiri v Daily Mirror, supra; Gautier v Pro-Football, Inc., supra, p 359). We have recently noted that this exception should be liberally applied (Arrington v New York Times Co., supra, p 440).
The newsworthiness exception applies not only to reports of political happenings and social trends (Arrington v New York Times Co., supra; Murray v New York Mag. Co., supra), but also to news stories and articles of consumer interest including developments in the fashion world (Pagan v New York Herald Tribune, supra). Nevertheless, the plaintiff contends that the photograph in this case did not depict a newsworthy event because it is a posed picture of a professional model taken at a photographic session staged by the defendant. However, the event or matter of public interest which the defendant seeks to convey is not the model’s performance, but the availability of the clothing item displayed. A fashion display is, of necessity, posed and arranged. Obviously the picture of the jacket does not lose its newsworthiness simply because the defendant chose to employ a person to model it in a controlled or contrived setting (Pagan v New York Herald Tribune, supra).
The fact that the defendant may have included this item in its column solely or primarily to increase the circulation of its magazine and therefore its profits, as the Appellate Division suggested, does not mean that the defendant has used the plaintiff’s picture for trade purposes within the meaning of the *185 statute. Indeed, most publications seek to increase their circulation and also their profits. It is the content of the article and not the defendant’s motive or primary motive to increase circulation which determines whether it is a newsworthy item, as opposed to a trade usage, under the Civil Rights Law (Arrington v New York Times Co., supra, p 440; Booth v Curtis Pub. Co., supra). It is settled that a “ ‘picture illustrating an article on a matter of public interest is not considered used for the purposes of trade or advertising within the prohibition of the statute * * * unless it has no real relationship to the article * * * or unless the article is an advertisement in disguise’ ” (Murray v New York Mag. Co., 27 NY2d 406, 409, supra, quoting Dallesandro v Holt & Co., 4 AD2d 470, 471, app dsmd 7 NY2d 735; see, also, Arrington v New York Times Co., supra, p 440; Pagan v New York Herald Tribune, supra; Gautier v Pro-Football, Inc., supra, p 359; Booth v Curtis Pub. Co., supra). A contrary rule would unreasonably and unrealistically limit the exception to nonprofit or purely altruistic organizations which are not the only, or even the primary, source of information concerning newsworthy events and matters of public interest.
The plaintiff’s primary contention is that his picture was used for advertising purposes within the meaning of the statute. Although the article was not presented to the public as an advertisement, and was published in a column generally devoted to newsworthy items (cf. Gautier v Pro-Football, Inc., supra, pp 358-359), the plaintiff claims that it is in fact an advertisement in disguise. In addition, although the defendant has submitted affidavits that the article was published solely as a matter of public interest, without any consideration for advertising concerns, and that the magazine received no payment for including the item in its “Best Bets” column, the plaintiff nevertheless contends that he has presented sufficient facts to require a trial on the issue.
The facts on which the plaintiff relies are entirely circumstantial. He does not claim to have personal knowledge, or direct proof, that this particular article was actually published by the defendant for advertisement purposes. The circumstances on which he bases his claim are (1) the fact that the news column contains information normally included in an advertisement identifying the designer of the jacket, the approximate price, and three places where the jacket may be purchased, and (2) the fact that some or all of those stores mentioned in the article had previously advertised products in the magazine. Those circumstances are not enough to raise a jury question as to whether the article was published for advertising purposes.
*186 The plaintiff does not dispute the fact that the information provided in the article is of legitimate reader interest. Indeed, similar information is frequently provided in reviews or news announcements of books, movies, shows or other new products including fashions (see, e.g., Pagan v New York Herald Tribune, supra). Nor does the plaintiff contend that it is uncommon for commercial publishers to print legitimate news items or reviews concerning products by persons or firms who have previously advertised in the publisher’s newspaper or magazine. In short, the plaintiff has not presented any facts which would set this particular article apart from the numerous other legitimate news items concerning new products. He offers only his speculative belief that in this case the information on the jacket was included in the defendant’s column for advertising purposes or perhaps, more vaguely, to promote additional advertising. That, in our view, is insufficient to defeat the defendant’s motion for summary judgment. The rule exempting articles of public interest from the operation of the Civil Rights Law would, as a practical matter, lose much of its force if publishers of articles which are at least prima facie newsworthy were required to incur the expense of a trial to meet such general and insubstantial accusations of disguised advertising.
14] The Appellate Division suggested that the plaintiff should be permitted to explore the merits of his claim during discovery proceedings. However, as noted, the plaintiff waived his right to discovery and certified that the case was ready for trial. It is also evident, from his opposition papers to the summary judgment motion, that he was content to present his case entirely on the basis of the circumstances of the publication. He never requested discovery in connection with the motion, or contended that discovery was necessary to respond to the facts alleged in the defendant’s affidavits (CPLR 3212, subd [f]). Under these circumstances it cannot be said, as a matter of law, that the plaintiff should be granted additional opportunities for discovery.
Finally, it should be emphasized that we do not mean to suggest that a publisher, who has employed a professional model to pose for pictures to be used in an article may avoid the agreed fee, or otherwise ignore contractual arrangements, if the model’s pictures are used to illustrate a newsworthy article or one involving matters of public interest. Although the complaint alludes to an agreement between the parties, the plaintiff has not sought to enforce a contract or recover damages for a breach. Since the plaintiff chose to frame his complaint entirely in terms *187 of rights covered by the Civil Rights Law, which we have concluded is not applicable in this case, the complaint should be dismissed.
Accordingly, the order of the Appellate Division should be reversed, the complaint dismissed and the certified question answered in the negative.
Chief Judge Cooke and Judges Jasen, Jones, Meyer, Simons and Kaye concur.
Order reversed, with costs, complaint dismissed, and question certified answered in the negative.

. In his brief to this court the plaintiff claims that the defendant’s use of his photographs in both articles is in issue because the plaintiff did not give his written consent to use them in either article. It appears that the plaintiff was injured at the photographic session and subsequently refused to sign a release in order to avoid compromising the unrelated action for physical injuries. Nevertheless, in his complaint, he only objected to the August 31 “Best Bets” article. Similarly, in his papers in opposition to the motion for summary judgment, the plaintiff identified that publication alone as the basis for the complaint. Thus the only question properly before us concerns the defendant’s liability for publishing the plaintiff’s photograph in the “Best Bets” article of August 31, 1981.

 On January 15, 1985, subsequent to the date of the Court of Appeals decision, the Appellate Division, upon that court’s own motion, corrected its originally published vote (98 AD2d 278, 299) to reflect that its vote “at the time of reversal of the order appealed from was Murphy, P.J.; Fein, J. concurred in a separate writing; and Asch and Milonas, JJ. dissented and would affirm in a wilting by Asch, J.” — [Rep.

. In view of the fact that the plaintiff is asserting his own right of publicity we need not consider whether the statute would also control assignment, transfer or descent of publicity rights (compare Price v Hal Roach Studios, 400 F Supp 836, 844, with Frosch v Grosset & Dunlap, 75 AD2d 768; and Rosemont Enterprises v Random House, 58 Misc 2d 1, affd 32 AD2d 892; see, also, Sims, Right of Publicity: Survivability Reconsidered, 49 Fordham L Rev 453).