*140
 
 OPINION OF THE COURT
 

 Alexander, J.
 

 Plaintiffs Joseph and Ida Finger commenced this action on behalf of themselves and their six children against defendant Omni Publications International, Ltd. seeking damages for the publication, without their consent, of a photograph of plaintiffs in conjunction with an article in Omni magazine discussing a research project relating to caffeine-aided fertilization.
 

 The salient facts are uncontroverted. The June 1988 issue of Omni magazine included in its "Continuum” segment an article entitled "Caffeine and Fast Sperm”, in which it was indicated that based on research conducted at the University of Pennsylvania School of Medicine,
 
 in vitro
 
 fertilization rates may be enhanced by exposing sperm to high concentrations of caffeine.
 

 A photograph of plaintiffs depicting two adults surrounded by six attractive and apparently healthy children accompanied the article. The caption beneath the photograph read "Want a big family? Maybe your sperm needs a cup of Java in the morning. Tests reveal that caffeine-spritzed sperm swim faster, which may increase the chances for
 
 in vitro
 
 fertilization.” Neither the article nor the caption mentioned plaintiffs’ names or indicated in any fashion that the adult plaintiffs used caffeine or that the children were produced through
 
 in vitro
 
 fertilization.
 

 Plaintiffs commenced this action alleging only violations of Civil Rights Law §§ 50 and 51. Defendant moved to dismiss the complaint, arguing that its use of the photograph in
 
 *141
 
 conjunction with the article did not violate Civil Rights Law §§50 and 51 because the picture was not used for trade or advertising but to illustrate a related news article on fertility. Defendant contended that because fertility is a topic of legitimate public interest, its use of the picture fit within the "newsworthiness exception” to the prohibitions of Civil Rights Law § 50. Supreme Court granted the motion on the authority of
 
 Arrington v New York Times
 
 (55 NY2d 433) and the Appellate Division affirmed. We granted leave to appeal and now affirm the Appellate Division.
 

 Plaintiffs contend that defendant violated Civil Rights Law §§ 50 and 51
 
 *
 
 by using their photograph without their consent "for advertising purposes or for the purposes of trade.”
 

 We have repeatedly observed that the prohibitions of Civil Rights Law §§ 50 and 51 are to be strictly limited to nonconsensual commercial appropriations of the name, portrait or picture of a living person. These statutory provisions prohibit the use of pictures, names or portraits "for advertising purposes or for the purposes of trade”
 
 only,
 
 and nothing more
 
 (Arrington v New York Times Co.,
 
 55 NY2d 433, 439,
 
 supra; see also, Freihofer v Hearst Corp.,
 
 65 NY2d 135;
 
 Stephano v News Group Publs.,
 
 64 NY2d 174). The statute was a direct legislative response to our decision in
 
 Roberson v Rochester Folding Box Co.
 
 (171 NY 538) and was "drafted narrowly to encompass only the commercial use of an individual’s name or likeness and no more.”
 
 (Arrington v New York Times Co.,
 
 55 NY2d 433, 435,
 
 supra.)
 

 Although the statute does not define "purposes of trade” or "advertising,” courts have consistently refused to construe these terms as encompassing publications concerning news
 
 *142
 
 worthy events or matters of public interest
 
 (see, Stephano v News Group Publs.,
 
 64 NY2d 174, 184,
 
 supra; Arrington v New York Times Co.,
 
 55 NY2d 433, 440,
 
 supra; see also, Gautier v Pro-Football, Inc.,
 
 304 NY 354;
 
 Humiston v Universal Film Mfg. Co.,
 
 189 App Div 467;
 
 Lahiri v Daily Mirror,
 
 162 Misc 776). Additionally, it is also well settled that " '[a] picture illustrating an article on a matter of public interest is not considered used for the purpose of trade or advertising within the prohibition of the statute * * * unless it has no real relationship to the article * * * or unless the article is an advertisement in disguise’.”
 
 (Murray v New York Mag. Co.,
 
 27 NY2d 406, 409, quoting
 
 Dallesandro v Holt & Co., 4
 
 AD2d 470, 471,
 
 appeal dismissed
 
 7 NY2d 735;
 
 see also, Stephano v News Group Publs.,
 
 64 NY2d 174, 185,
 
 supra; Arrington v New York Times Co.,
 
 55 NY2d 433, 440,
 
 supra.)
 

 Plaintiffs do not contest the existence of this "newsworthiness exception” and concede that the discussion of
 
 in vitro
 
 fertilization and the use of caffeine to enhance sperm velocity and motility are newsworthy topics. They contend, however, that their photograph bears "no real relationship” to the article, that none of plaintiffs’ children were conceived by
 
 in vitro
 
 fertilization or any other artificial means, and that they never participated in the caffeine-enhanced reproductive research conducted at the University of Pennsylvania.
 

 Consequently, according to plaintiffs, there was no "real relationship” between their photograph and the article, and any relationship that may exist is too tenuous to be considered a relationship at all. They argue that there are no "external and objective” criteria, such as were found to exist in
 
 Arrington
 
 (55 NY2d 433, 441,
 
 supra)
 
 that would indicate that plaintiffs have any real or legitimate connection with the subject of caffeine-enhanced
 
 in vitro
 
 fertilization, the subject of the accompanying article and that unlike the plaintiff in
 
 Murray v New York Mag. Co.
 
 (27 NY2d 406, 409,
 
 supra)
 
 these plaintiffs had not "voluntarily become part of the spectacle” or "visual[ly] participated] in a public event which invited special attention.”
 

 Plaintiffs misperceive the "newsworthy” theme of the article, which is fertility or increased fertility. Indeed, the article, in its opening sentences, observes that caffeine "can increase a man’s fertility by boosting the performance of his sperm” and further indicates that "those who are looking for a fertility tonic shouldn’t head for the nearest coffee pot” because the
 
 *143
 
 concentrations of caffeine used in the experiment "were so high [as to] be toxic.”
 

 The theme of fertility is reasonably reflected both in the caption beneath the picture, "Want a big family?”, and the images used — six healthy and attractive children with their parents to whom each child bears a striking resemblance. Clearly then, there is a "real relationship” between the fertility theme of the article and the large family depicted in the photograph. That the article also discusses
 
 in vitro
 
 fertilization as being enhanced by "caffeine-spritzed sperm” does no more than discuss a specific aspect of fertilization and does not detract from the relationship between the photograph and the article.
 

 As we have noted, the "newsworthiness exception” should be liberally applied
 
 (see, Arrington v New York Times Co.,
 
 55 NY2d 433, 440,
 
 supra; Stephano v News Group Publs.,
 
 64 NY2d 174, 184,
 
 supra).
 
 The exception applies not only to reports of political happenings and social trends as in
 
 Arrington,
 
 and to news stories and articles of consumer interest such as developments in the fashion world as in
 
 Stephano (see also, Pagan v New York Herald Tribune,
 
 32 AD2d 341,
 
 affd
 
 26 NY2d 941) but to matters of scientific and biological interest such as enhanced fertility and
 
 in vitro
 
 fertilization as well. Moreover, questions of "newsworthiness” are better left to reasonable editorial judgment and discretion
 
 (see, Gaeta v New York News,
 
 62 NY2d 340, 349); judicial intervention should occur only in those instances where there is " 'no real relationship’ ” between a photograph and an article or where the article is an " 'advertisement in disguise’.”
 
 (Murray v New York Mag. Co.,
 
 27 NY2d 406, 409,
 
 supra.)
 

 We conclude here that it cannot be said, as a matter of law, that there is no "real relationship” between the content of the article and the photograph of plaintiffs. Thus the use of the photograph does not violate the prohibitions of Civil Rights Law §§ 50 and 51.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Wachtler and Judges Simons, Kaye, Titone, Hancock, Jr., and Bellacosa concur.
 

 Order affirmed, with costs.
 

 *
 

 Section 50, entitled "Right of privacy”, states: "A person, firm or corporation that uses for advertising purposes, or for the purposes of trade, the name, portrait or picture of any living person without first having obtained the written consent of such person, or if a minor of his or her parent or guardian, is guilty of a misdemeanor.”
 

 Section 51 states, in part: "Any person whose name * * * or picture is used within this state for advertising purposes or for the purposes of trade without the written consent first obtained as above provided may maintain an equitable action in the supreme court of this state against the person, firm or corporation so using his name * * * or picture, to prevent and restrain the use thereof; and may also sue and recover damages for any injuries sustained by reason of such use
 
 and if the defendant shall have knowingly used such person’s * * * picture in such manner as is forbidden or declared to be unlawful by section fifty of this article, the jury
 
 * * *
 
 may award exemplary damages”
 
 (emphasis supplied).