Robert ALFANO, Plaintiff,

v.

NGHT, INC., NGC Network U.S., LLC operating the National Geographic Channel (as a business enterprise of Fox Cable Networks, Inc.), and Corbis Corporation, Defendants.

No. 06 CV 3511(NG)(JO).

United States District Court, E.D. New York.

June 11, 2009.

Carol E. Owens, H. Todd Bullard, Harris Beach, PLLC, Pittsford, NY, H. Todd

Bullard, Louis Grandelli, PC, New York, NY, for Plaintiff.

Christopher Healy, John Hooper, Reed Smith LLP, New York, NY, Stephen M. Prignano, Edwards Angell Palmer & Dodge LLP, Providence, RI, for Defendants.

Carol F. Simkin, New York, NY, pro se.

## OPINION AND ORDER

GERSHON, District Judge:

Plaintiff Robert Alfano brings this action against NGHT, Inc., NGC Network U.S., LLC, operating the National Geographic Channel ("NGC") as a business enterprise of Fox Cable Networks, Inc. (collectively, the "NGC Defendants"), and Corbis Corporation ("Corbis"), seeking injunctive relief and compensatory damages (from all defendants) and an accounting (from Corbis) under New York Civil Rights Law § 51. Pursuant to Rule 56 of the Federal Rules of Civil Procedure, all defendants move for summary judgment on the first count and defendant Corbis, the sole defendant on the second count, moves for summary judgment on that count. Plaintiff moves for partial summary judgment on the issue of liability with respect to all defendants on the first count and as to Corbis on the second count.

## FACTS

The material facts pertinent to the resolution of these motions are not in dispute. This case arises from plaintiff's encounter with the press outside the New York state courthouse where notorious mobster John Gotti was facing trial in 1991. Mr. Gotti's trial drew intense media scrutiny, and reporters and photographers sometimes thronged outside the courthouse at the end of the day. Plaintiff attended Mr. Gotti's trial on at least three occasions, believing it to be "very high profile" and the "trial of the decade." At the end of one of those days, plaintiff left the courthouse with an acquaintance, a clerk then working for Mr. Gotti's counsel. Mr. Gotti had just left the courthouse by the same exit, and plaintiff observed that a number of photographers were taking pictures.

According to plaintiff, Mr. Gotti asked plaintiff to "get [him] to [his] car". Plaintiff spotted one of Mr. Gotti's apparent associates waving him towards the car, "grabbed him [Gotti] and ... turned him around and just walked him to the car". Plaintiff gave Mr. Gotti this assistance voluntarily. As plaintiff walked Mr. Gotti to his car, Ed Quinn, a freelance photographer who is not a party to this suit, took a picture of the two of them, showing plaintiff grasping Mr. Gotti's arm (the "Image"). Mr. Quinn later consigned the Image to defendant Corbis for licensing.

On some unspecified date before June 2005, Corbis began to display the Image on its website to offer it for licensing. NGC then licensed the Image from Corbis for use in connection with its program *Inside the Mafia.* This documentary depicted the history of organized crime in America, including the several trials of Mr. Gotti. It apparently used recreations of events as well as actual footage, as the production did involve actors (identified as extras) and sets.

Plaintiff himself was never involved in the Mafia, and, in fact, no reference to plaintiff (not even the Image itself) actually appears in *Inside the Mafia.* However, on or about May 30, 2005, NGC installed phone kiosk posters in New York City advertising *Inside the Mafia* that incorporated the Image. NGC also included the Image in the *Inside the Mafia* press kit and in newspaper advertisements for the program. On or about June 2005, plaintiff learned from a family member that he appeared in the phone kiosk posters.

Plaintiff's counsel communicated with the NGC Defendants, and the NGC Defendants agreed to cease all use of the Image. It appears, however, that Corbis continued to offer the Image for licensing to others for some time afterwards. Neither Corbis nor the NGC Defendants ever sought the consent of plaintiff for any use of the Image.

On May 30, 2006, plaintiff commenced this action in state court against the NGC Defendants and Wall–to–Wall Media, Ltd. The action was removed to federal court by the NGC Defendants on July 17, 2006. Plaintiff amended the complaint to add a second cause of action and add claims against defendant Corbis to the action on January 11, 2007. Plaintiff agreed to the dismissal of its claims against Wall–to–Wall Media, Ltd., and they were dismissed on February 20, 2007.

## DISCUSSION

### I. Standard of Review

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c). A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court must construe the facts in the light most favorable to the nonmoving party, and all reasonable infer-

ences and ambiguities must be resolved against the moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Hunt v. Cromartie,* 526 U.S. 541, 552, 119 S.Ct. 1545, 143 L.Ed.2d 731 (1999). However, the non-moving party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 12 (2d Cir.1986), but "must come forward with specific facts showing that there is a genuine issue for trial," *Matsushita,* 475 U.S. at 586–8, 106 S.Ct. 1348 (emphasis removed).

### II. Plaintiff's Claims Against the NGC Defendants

The NGC Defendants move for summary judgment on plaintiff's first count, arguing that *Inside the Media* is newsworthy and thus that their use of the Image in various advertising materials promoting the film is protected under the "incidental use" exception to New York Civil Rights Law § 51 for advertisements of newsworthy media.

 Section 51, often called New York's "right of privacy" law,[1] prohibits certain "nonconsensual commercial appropriations of the name, portrait or picture of a living person." *Finger v. Omni Publ'ns Int'l Ltd.,* 77 N.Y.2d 138, 141, 564 N.Y.S.2d 1014, 566 N.E.2d 141 (1990). It provides that "[a]ny person whose name, portrait, picture or voice is used within this state for advertising purposes or for the purposes of trade without ... written consent" may seek damages or injunctive relief. N.Y. Civ. Rights Law § 51 (McKinney 2008). However, Section 51 (and its criminal counterpart, N.Y. Civ. Rights

---

1. The right of privacy is "exclusively statutory" in New York and comprehends the right of publicity as well. *Stephano v. News Group Publ'ns,* 64 N.Y.2d 174, 183, 485 N.Y.S.2d 220, 474 N.E.2d 580 (1984); *Groden v. Random House, Inc.,* 61 F.3d 1045, 1049 (1995).

Law § 50) "were drafted narrowly to encompass only the commercial use of an individual's name or likeness and no more." *Arrington v. New York Times Co.,* 55 N.Y.2d 433, 439, 449 N.Y.S.2d 941, 434 N.E.2d 1319 (1982). Mindful of its potential conflict with the First Amendment, courts have read Section 51 with "sensitivity to ... the values our State and Federal Constitutions bespeak in the area of free speech and free press." *Arrington,* 55 N.Y.2d at 440, 449 N.Y.S.2d 941, 434 N.E.2d 1319; *see also Time, Inc., v. Hill,* 385 U.S. 374, 382, 87 S.Ct. 534, 17 L.Ed.2d 456 (1967). In particular, they have held that "these sections [50 and 51] do not apply to reports of newsworthy events or matters of public interest". *Messenger ex rel. Messenger v. Gruner + Jahr Printing and Publ'g,* 94 N.Y.2d 436, 441, 706 N.Y.S.2d 52, 727 N.E.2d 549 (2000). And in this context, " 'newsworthiness' is to be broadly construed." *Id.* However, in the rare case of an article purporting to be newsworthy but in fact "so infected with fiction, dramatization or embellishment that it cannot be said to fulfill the purpose of the newsworthiness exception," this exception will not apply. *Id.* at 446, 706 N.Y.S.2d 52, 727 N.E.2d 549.

■ Plaintiff's argument that *Inside the Mafia* is not newsworthy within the meaning of *Messenger* is unconvincing. The activities of organized crime in the United States have long been a matter of public interest, even fascination. Plaintiff himself admits that he considered Mr. Gotti's trial to be "very high profile" and "the trial of the decade". As newsworthiness is to be "broadly construed", *id.* at 441, 706 N.Y.S.2d 52, 727 N.E.2d 549, coverage of the trial of a major organized crime figure surely falls into that category.[2] In addi-

tion, although plaintiff characterizes *Inside the Mafia* as a "docudrama" which was not strictly historically accurate, with regard to the *film* (as opposed to its advertising, see below) he does not make allegations that amount to its being the kind of "substantially fictional" material which, despite claimed newsworthiness, is "... nothing more than [an attempt] to trade on the persona of [plaintiff]" that *Messenger* suggested might fall under the prohibitions of Section 51. 94 N.Y.2d at 446, 706 N.Y.S.2d 52, 727 N.E.2d 549. *Inside the Media* thus qualifies as "newsworthy" for the purposes of Section 51.

■■ Turning to the question of advertising, a media publication with newsworthy content may use an individual's image in an advertisement that reproduces that content—for instance, the reproduction of a magazine cover depicting a famous actress in an advertisement for subscriptions to the magazine—without violating Section 51. Courts have reasoned that Section 51 must permit this kind of "incidental use" to allow a publication to "prove its worth and illustrate its content." *Booth v. Curtis Publ'g Co.,* 15 A.D.2d 343, 349, 223 N.Y.S.2d 737 (1st Dep't 1962); *Velez v. VV Publ'g Corp.,* 135 A.D.2d 47, 49–50, 524 N.Y.S.2d 186 (1st Dep't 1988). Notably, such "incidental use" is protected even if the *particular* image used does not appear in the media in question, as long as the use otherwise qualifies as an "incidental use" by illustrating the content of newsworthy media. *Groden v. Random House, Inc.,* 61 F.3d 1045, 1049 (2d Cir.1995); *New York Magazine v. Metropolitan Transit Authority,* 987 F.Supp. 254, 267 (S.D.N.Y.1997), *affirmed in part, vacated in part on other grounds,* 136 F.3d 123 (2d Cir.1998); *see also Rand v. Hearst Corp.,* 31 A.D.2d 406,

---

**2.** To the extent that plaintiff is arguing that the press kit or other advertising materials for *Inside the Mafia* standing alone lack newsworthiness, it is the media report, not the advertising materials by themselves, whose newsworthiness is at issue.

407–08, 410, 298 N.Y.S.2d 405 (1st Dep't 1969).

■ The NGC Defendants' use of the Image in the *Inside the Media* promotional materials is such an "incidental use." As discussed above, the film is newsworthy. Although plaintiff's image does not appear in *Inside the Mafia*, the film did cover the trial that plaintiff attended. An image of plaintiff and Mr. Gotti leaving the courthouse together is therefore sufficiently "illustrative of the content" of that work to qualify as an "incidental use."

■ Finally, "New York does not recognize [the] common-law tort" of false light (*i.e.*, the publication of information that would place an individual in a "false light" in the public eye). *Messenger*, 94 N.Y.2d at 448, 706 N.Y.S.2d 52, 727 N.E.2d 549. For instance, the use of images to illustrate newsworthy articles is not actionable under a theory of false light "even where a plaintiff's photograph, when juxtaposed with an article, could reasonably have been viewed as falsifying or fictionalizing plaintiff's relation to the article." *Id.* at 443, 706 N.Y.S.2d 52, 727 N.E.2d 549 (no liability where magazine juxtaposed image of young teenage girl with letter column describing another girl's drunken sexual encounter with multiple partners).[3] The Second Circuit has declined to recognize a tort of false light in the context of "incidental uses" as well. *See Groden*, 61 F.3d at 1050.

I therefore reject plaintiff's argument that the NGC Defendants' use of the Image was impermissible because it "fictionalized" plaintiff's experience and created the impression that plaintiff had a relationship with Mr. Gotti or the Mafia which he did not actually have. Ultimately, plaintiff is trying to make a claim that the use of the Image to advertise a Mafia documentary placed him in a false light, but New York law is clear that plaintiffs cannot recover on this theory even under egregious circumstances.

Plaintiff also argues that the promotional materials for *Inside the Media* themselves are the sort of "fictionalization" that *Messenger* indicated might be actionable under Section 51.[4] Because the Image appeared in a press kit along with, for example, an image of a hotel plaintiff never visited and a note of a date on which he was just a toddler, plaintiff argues that the press kit *itself* constitutes a fiction that deserves no protection. This argument is not persuasive, either. There is no basis

**3.** In the closely related context of images which are used to illustrate, as opposed to advertise, media publications, the courts have found no liability under Section 51 for the use of an image where the image had a "real relationship" (defined broadly) with a newsworthy article. *Beverley v. Choices Women's Med. Ctr., Inc.*, 78 N.Y.2d 745, 752, 579 N.Y.S.2d 637, 587 N.E.2d 275 (1991); *Messenger*, 94 N.Y.2d at 442–43, 706 N.Y.S.2d 52, 727 N.E.2d 549. For example, courts have found a "real relationship" between an article and its illustration where the article concerned caffeine-aided *in vitro* fertilization and the image was of a large family, even though the family in question never used this technique. *Finger*, 77 N.Y.2d at 143, 564 N.Y.S.2d 1014, 566 N.E.2d 141. The parties in this case have argued at length whether a

"real relationship" exists between the Image and *Inside the Media*, but, as discussed above, it is more appropriate to analyze the Image as an "incidental use." Even under the parties' formulation, however, as it illustrates an event depicted in the film, the Image can be said to have a "real relationship" with *Inside the Media*.

**4.** According to *Messenger*, such a fictionalization falls under the prohibitions of Section 51 not because it places its subject in a false light, but simply because it is a use in trade of plaintiff's image that is so inaccurate as not to qualify for the newsworthiness exception. *See* 94 N.Y.2d at 446, 706 N.Y.S.2d 52, 727 N.E.2d 549.

for assuming that a person examining the press kit would believe that all the items in it were meant to pertain to the life of an unidentified figure (plaintiff) shown escorting a notorious mobster. More importantly, this argument focuses on the wrong material. Plaintiff has identified no authority or rationale suggesting that the lawfulness of an advertising "incidental use" should be evaluated with respect to other advertising materials it may appear with, rather than with respect to the media report itself (the newsworthiness of which is, of course, the justification for the use). As discussed above, *Inside the Media* is unquestionably newsworthy. Thus, for the reasons already discussed, the NGC Defendants' "incidental use" of the Image in its advertising was permissible.

Summary judgment is thus granted to the NGC Defendants on the first count.

### III. Plaintiff's Claims Against Corbis

#### A. First Count

■ Defendant Corbis moves for summary judgment on plaintiff's first count (with respect to its licensing of the Image to the NGC Defendants for use in the advertising materials for *Inside the Mafia*), arguing that the licensing of the Image falls under Section 51's exception for sales for use in a lawful manner.[5]

In *Arrington*, the Court of Appeals held that the mere sale of images, without more, is a use "for the purposes of trade" and thus creates liability under Section 51. 55 N.Y.2d at 443, 449 N.Y.S.2d 941, 434 N.E.2d 1319. However, in 1983, shortly after *Arrington* was decided, the New York state legislature amended Section 51 to clarify that it was not intended to prohibit sales of images for use in a lawful manner: "[N]othing contained in this arti-

cle shall be so construed as to prevent any person ... from selling or otherwise transferring any [such] material ... to any user ... for use in a manner lawful under this article ..." This exception makes it possible for freelance photographers like Mr. Quinn and licensing companies like Corbis to conduct their business without liability so long as the ultimate use of their images is lawful; without it, they would be liable for the sale of the very images which media publications could then publish with impunity.

Although plaintiff never clearly states the basis for Corbis's liability on the first count, it would appear to arise from Corbis's licensing of the Image to the NGC Defendants, which led to its use by the NGC Defendants. As discussed above, however, I find that the NGC Defendants' use of the Image was a lawful "incidental use." Therefore, Corbis's licensing of the Image to the NGC Defendants is explicitly excepted from liability under Section 51. Summary judgment is granted to Corbis on the first count.

#### B. Second Count

Corbis also moves for summary judgment on the second count, concerning its long-running display of the Image on its website for licensing purposes, on the grounds that such display is a necessary aspect of its lawful licensing of the Image and thus also falls under Section 51's exception for sales for use in a lawful manner.

■ Plaintiff alleges, and Corbis appears to concede, that Corbis has displayed the Image on its website for sale since before June 2005 and at least until 2007, possibly even to the present day. Plaintiff characterizes such display as "ad-

---

**5.** Corbis incorporates by reference the NGC Defendants' arguments regarding the lawful-

ness of the use of the Image in the advertising materials for *Inside the Mafia*.

vertising," arguing that the Image as displayed on Corbis's website served as advertising for the licensing of the Image. Whether called advertising or an offer for sale, such use implicates Section 51.

■ There is little post-*Arrington* case law addressing the sale of images as a use in trade, and the parties have identified no case law directly addressing the question of *advertising* for sale of images for use in a lawful manner, which commonly will involve some display or circulation of the images themselves. However, even before the 1983 amendment of Section 51, one court found that a photographer who sent photographs along with a related article to many companies in the hope of getting the (admittedly newsworthy) article published was not liable under Section 51 because such circulation was a essential part of the process of publication. "[T]he protection of the necessary steps in the process of publishing the author's work, precludes liability for the exhibition of ... photographs, prior to their actual publication." *Costlow v. Cusimano*, 34 A.D.2d 196, 199, 311 N.Y.S.2d 92 (4th Dep't 1970). An analogous logic applies here. The present-day use of websites to advertise images for licensing or sale does mean that the dissemination of an image in the course of advertising it—and thus the invasion of the privacy interest a plaintiff under Section 51 seeks to protect—is at least potentially broader than it used to be. Nonetheless, in order to be able to license the Image for lawful use, Corbis must be able to take the "necessary step[ ]" of advertising in the ways customary to its industry, which now includes display of images on its website.

Indeed, the argument against liability under Section 51 for such advertising is stronger now than it was when *Costlow* was decided. In amending Section 51 after *Arrington*, the state legislature clearly intended to protect the trade of selling or licensing images. If the display of images as a form of advertisement for their sale or licensing were forbidden under Section 51, a licensing company might find itself liable for damages even where its sales were for use in a lawful manner and it would thus otherwise not be liable under Section 51. This would defeat the purpose of the "use in a lawful manner" exception. I therefore find that the display of the Image in advertising for sale for use in a lawful manner is also excepted from liability under Section 51. Since, as discussed above, the use made of this Image by the NGC Defendants was lawful, and there is nothing in the record here to indicate that Corbis intended to offer the Image for unlawful use, Corbis's display of the Image on its website does not violate Section 51.

Summary judgment is therefore granted to Corbis on the second count.

## III. Plaintiff's Motion for Partial Summary Judgment

Plaintiff has moved for partial summary judgment against all defendants on the first count and against Corbis on the second count. For the same reasons that I have granted summary judgment on these counts to defendants, I deny summary judgment to plaintiff on all counts.

## IV. Plaintiff's Statement Under Local Civil Rule 56.1

Finally, it should be noted that plaintiff's "Rule 56.1 Statement of Material Facts Answering Defendants' Joint Statement of Facts and Supporting Plaintiff's Cross-Motion for Summary Judgment as to Liability" substantially fails to meet the requirements of Local Civil Rule 56.1, which specifies:

(b) The papers opposing a motion for summary judgment shall include *a correspondingly numbered paragraph responding to each numbered paragraph*

*in the statement of the moving party*
. . . .

(d) Each statement *by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact,* must be followed by citation to evidence which would be admissible, set forth as required by Federal Rule of Civil Procedure 56(e).

■■■ Plaintiff has not followed the format directed by Rule 56.1. More importantly, while not claiming that issues of fact preclude summary judgment on liability, plaintiff frequently "denies knowledge or information sufficient to form a belief as to the truth or falsity of" defendants' statements of fact (*e.g.,* Plaintiff's Rule 56.1 Statement p. 2 at ¶ 4), which is not sufficient to create an issue of fact for Rule 56 purposes. *Aztar Corp. v. NY Entm't, LLC,* 15 F.Supp.2d 252, 254 n. 1 (E.D.N.Y. 1998); *Toyomenka Pacific Petroleum, Inc. v. Hess Oil Virgin Islands Corp.,* 771 F.Supp. 63, 66–67 (S.D.N.Y.1991) (referring to predecessor Local Rule 3(g)). Remarkably, plaintiff has even denied knowledge concerning the literal contents of his own deposition testimony (*e.g.,* Plaintiff's Rule 56.1 Statement p. 5 at ¶ 20), and denied knowledge concerning a statement of fact proffered by defendants and then asserted that statement of fact verbatim later (*compare* Defendants' Rule 56.1 Statement ¶ 15 *with* Plaintiff's Rule 56.1 Statement, p. 5 at ¶ 20 *and* Plaintiff's Rule

56.1 Statement, p. 10 at ¶ 26). Finally, plaintiff's statements of fact sometimes lack citations to admissible evidence (*e.g.,* Plaintiff's Rule 56.1 Statement, p. 5 at ¶ 18, 19).

Defendants have requested, pursuant to Rule 56.1(c), that, as a result of plaintiff's noncompliance, their own Rule 56.1 statement be deemed admitted in its entirety.[6] While I decline to impose the harsher sanction requested by defendants, where plaintiff has nowhere in his Rule 56.1 statement controverted with citations to admissible evidence a statement of fact in defendants' Rule 56.1 statement which *is* supported by citations to admissible evidence, I have deemed that statement of fact to be admitted for the purposes of this motion. *See Gubitosi v. Kapica,* 154 F.3d 30, 31 n. 1 (2d Cir.1998); *Cosy Goose Hellas v. Cosy Goose USA Ltd.,* 581 F.Supp.2d 606, 616–17 (S.D.N.Y.2008). For example, I have deemed admitted Defendants' Rule 56.1 Statement ¶ 5 ("Alfano testified that he knew the trial was 'a very high profile case,' the 'trial of the decade' and 'all over the news.' (Alfano Dep. at 79–80)"). Similarly, if plaintiff has separately controverted and then restated verbatim a defendant's statement of fact, it is deemed admitted.

**CONCLUSION**

For the reasons discussed above, all defendants' motions for summary judgment

---

**6.** In improperly-filed reply papers, plaintiff asserts that, "in the absence of an official form statement relative to structure for a cross-movant's review and edification[,]" I should not "give weight to [defendants'] purported preference for *separately* numbered paragraphs." (Pl.'s Reply Mem. at 9–10.) This is not a preference (purported or otherwise) of defendants, but an explicit rule of this district, *see* Local Civil Rule 56.1(b), and plaintiff did not need an official form to guide him in following it. In addition, that plaintiff

was, as he claims, "reluctant to have certain of Defendants' statements deemed admitted" or "took issue with the tone or verbiage of some of Defendants' statements" (Pl.'s Reply Mem. at 10) in no way excuses plaintiff's obfuscatory tactics in responding to defendants' statements of fact. (Although plaintiff's reply papers were stricken from the docket as unauthorized and were not considered on the merits, *see* Order of May 29, 2008, they do offer plaintiff's justifications for his approach to drafting his Rule 56.1 statement.)

on the first count are granted. Defendant Corbis's motion for summary judgment on the second count is also granted. Plaintiff's motion for partial summary judgment on all counts is denied. The Clerk of Court is directed to enter judgment accordingly and to close the case.

**SO ORDERED.**