# In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-3012

BEVERLY STAYART, a/k/a BEV STAYART

*Plaintiff-Appellant,*

*v.*

GOOGLE INC.,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 2:10-cv-00336—**Lynn Adelman**, *Judge*.

ARGUED MARCH 27, 2012—DECIDED MARCH 6, 2013

Before FLAUM, WILLIAMS, and TINDER, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Dissatisfied with the results of internet searches for her name, Beverly Stayart has launched a legal campaign against internet search engines. In this, her third lawsuit, she contends that Google is in violation of Wisconsin misappropriation laws because a search for "bev stayart" may lead to a search for "bev stayart levitra," which in turn may lead to websites advertising drugs to treat male erectile dys-

function. The district court dismissed her lawsuit for failure to state a plausible claim for relief and she appeals.

However, Stayart has not articulated a set of facts that can plausibly lead to relief under Wisconsin's misappropriation laws because the use she alleges falls within two exceptions: public interest and incidental use. First, Stayart made the challenged search phrase "bev stayart levitra" a matter of public interest by suing Yahoo! over it in 2010. And as a matter of public interest, that phrase cannot serve as the basis of a misappropriation suit. In addition, Stayart has not pled any facts showing a substantial connection between Google's use of her name and its efforts to generate advertising revenues, triggering the incidental-use exception to Wisconsin's misappropriation laws. For these reasons, we affirm.

## I. BACKGROUND

Google Inc. is a Delaware corporation with its principal place of business in California. The company's internet search engine, also called "Google," compiles information available on the internet into a single database, enabling users to streamline and expedite searches for online content. When an internet user enters descriptive words or phrases into the search engine, Google generates a list of search results that are relevant to the user's query. While the search engine is free to users, Google generates revenue from its services by offering paid placement advertising on the search results pages.

Appellant Beverly Stayart, an adult citizen of Elkhorn, Wisconsin, claims that she is widely known on the

internet as a respected scholar of genealogy and a "positive and wholesome" leader in the animal rights movement. She believes that she is the only "Bev Stayart" or "Beverly Stayart" on the internet, that her name carries significant commercial value, and that it is a competitive keyword phrase for internet search engines. In April 2010, Stayart filed a state-law misappropriation claim against Google, alleging that the company used her name without permission to generate financial revenue through online trade and advertising. Specifically, Stayart alleges that various features of Google's search engine violate her right of publicity by using her name to trigger sponsored links, ads, and related searches to medications, including Levitra, Cialis, and Viagra, all of which are trademarks of nationally advertised oral treatments for male erectile dysfunction.

Stayart directs her allegations at three core features of Google's search engine: Google Suggest, AdWords and Sponsored Links, and Related Searches. Google Suggest is an automated tool that recommends additional search queries when a user begins to type descriptive words or phrases into the search engine. These additional search queries derive from an algorithm that tracks and analyzes all queries run by internet users. Google Suggest lists the most popular combination of terms used by individuals conducting identical or related search queries. For example, if a user types "chicago" into Google's search engine, even before the user presses "enter," Google recommends several searches: "chicago tribune," "chicago bears," "chicago weather," and "chicago sun times." One of Stayart's

complaints is that when a user enters "bev stayart" into Google's search engine, Google Suggest automatically recommends an additional search for "bev stayart levitra."

Google's paid placement advertising program is called "AdWords." Under this program, an advertiser can bid on specific keywords or keyword phrases. When an internet user conducts a search for one of the keywords or keyword phrases, Google automatically embeds up to eleven "sponsored links" to the advertiser's website on each search results page. Google earns a fee each time a user clicks on a sponsored link. Stayart further complains that a search for "bev stayart levitra" triggers the display of a Google Sponsored Link for Levitra on the search results page.

Google's search results page frequently displays links to additional search queries related to the one executed by the user. An internet user can access these "Related Searches" on the left-hand side of the search page under "show options" or by clicking on a link that says "more like this." On the search results page for the query "bev stayart levitra," Google displays links to additional searches related to "bev stayart" and "Levitra." According to Stayart, many of these links lead to even more Google Sponsored Links for a wider variety of erectile dysfunction treatments.

Stayart's complaint alleges that Google violated Wisconsin Statute § 995.50(2)(b), which protects an individual's right of privacy, by misappropriating her name to generate financial revenue through online trade and advertising. She also asserted a common-law misap-

propriation claim. The district court granted Google's motion to dismiss with prejudice, finding that Stayart failed to state a plausible claim for relief because Google merely reports the results of its search of publicly available websites. Stayart appeals.

## II. ANALYSIS

We review the district court's decision on a motion to dismiss for failure to state a claim de novo. *Wilson v. Price*, 624 F.3d 389, 391 (7th Cir. 2010).

Wisconsin recognizes a right of privacy, Wis. Stat. § 995.50, that includes a prohibition on misappropriation, or "[t]he use, for advertising purposes or for purposes of trade, of the name, portrait or picture of any living person, without having first obtained the written consent of the person . . . ." *Id.* § 995.50(2)(b). Wisconsin common law also prohibits misappropriation. *See Hirsch v. S.C. Johnson & Son, Inc.*, 280 N.W.2d 129, 134 (Wis. 1979).

We recently explored the history of Wisconsin's misappropriation provision and noted that it was modeled on New York's privacy statute. *See Bogie v. Rosenberg*, ___ F.3d ___, 2013 WL 174113, at *3 (7th Cir. Jan. 17, 2013). And because Wisconsin's law "shall be interpreted in accordance with the developing common law of privacy . . . with due regard for maintaining freedom of communication, privately and through the media," Wis. Stat. § 995.50(3), we determined that "sound analysis" of Wisconsin's privacy statute "includes consideration of the developing common law of privacy in Wisconsin,

as well as in other jurisdictions, especially in New York." *Bogie*, 2013 WL 174113, at *3.

Our analysis of Wisconsin's misappropriation law in *Bogie* led us to affirm Wisconsin's recognition of the newsworthiness or public interest exception to its misappropriation law. *Id.* at *8; *see Rand v. Heart Corp.*, 298 N.Y.S.2d 405, 409 (App. Div. 1969), *aff'd* 257 N.E.2d 895, 896 (N.Y. 1970) (stating that phrases such as "advertising purposes" and for the "purposes of trade . . . must be construed narrowly and not used to curtail the right of free speech, or free press, or to shut off the publication of matters newsworthy or of public interest, or to prevent comment on matters in which the public has an interest or the right to be informed"). In *Bogie*, we also concluded that the developing right of privacy includes an incidental use exception that applies in Wisconsin. *Bogie*, 2013 WL 174113, at *9. These exceptions apply to render Stayart's misappropriation claims against interest search engines futile.

"[W]here a matter of legitimate public interest is concerned, no cause of action for invasion of privacy will lie." *Van Straten v. Milwaukee Journal Newspaper-Publisher*, 447 N.W.2d 105, 112 (Wis. Ct. App. 1989). And the applicability of the public interest exception presents a question of law. *Bogie*, 2013 WL 174113, at *8. Courts broadly define matters of public interest and have applied the exception to consumer interest articles, scientific interest pieces, political reports, social trends, movies, and documentaries. *Id.* (collecting cases); *Finger v. Omni Publ'ns Int'l, Ltd.*, 566 N.E.2d 141, 144 (N.Y. 1990).

The search term "bev stayart levitra" is a matter of public interest primarily because Stayart has made it one—and, given the current lawsuit, ensures that it remains so. In January 2010—four months before she filed *this* lawsuit—she filed a lawsuit against Yahoo! in federal court, alleging that its search assist feature suggested the phrase "bev stayart levitra" when she typed "bev stayart," in violation of Wisconsin's misappropriation law. *See Stayart v. Yahoo! Inc.*, No. 2:10-cv-00043-LA (E.D. Wis. filed Jan. 19, 2010). In her complaint in the instant case, Stayart alleges that "Google's misappropriation of Bev Stayart's name and likeness began at least as early as February 1, 2010 . . . ," the month after she sued Yahoo! over the same search phrase. And all the searches she attaches to her complaint were executed in April 2010.

Court documents, including Stayart's complaint and the district court's 2011 order dismissing that complaint, are matters of public interest. *Cf. In re Cont'l Ill. Sec. Litig.*, 732 F.2d 1302, 1314 (7th Cir. 1984) (The public has an interest in the fairness of courts and judges, and the public has a right of access, "guaranteed by the first amendment, to information before the court relating to matters of public interest."). It follows that if court documents warrant the public interest exception, the search providers and indexes that lead the public to those documents or that capture key terms related to them are likewise entitled to that exception. To the extent that Stayart has or would argue that Google's profit motives undermine the reliance on the public interest argument, the exception applies even when the entities sharing the information do so "largely, and even

primarily, to make a profit." *Davis v. High Soc'y Magazine*, 457 N.Y.S.2d 308, 313 (App. Div. 1982).

The incidental use exception also limits the application of Wisconsin's misappropriation law. *Bogie*, 2013 WL 174113, at \*9. "For use of a person's name for advertising or trade purposes to be actionable under Wisconsin law, 'there must be a substantial rather than an incidental connection between the use and the defendant's commercial purpose.'" *Id.* (quoting *Stayart v. Yahoo! Inc.*, 2011 WL 3625242, at \*2 (E.D. Wis. Aug. 17, 2011)). Nothing in Stayart's thirty-page complaint—139 pages with attachments—suggests that the connection between Stayart's name and Google's efforts to generate revenues through its use is "substantial rather than incidental." *Id.* (quotation marks omitted). In fact, Stayart's complaint and the hundreds of pages of attachments and supplemental documents she has filed suggest that the term "levitra" and not Stayart's name triggers the erectile dysfunction ads. But even if Google's use of her name were substantial, it would still be entitled to the public interest exception.

## III. CONCLUSION

For the reasons set forth above, we AFFIRM the district court's decision granting Google's motion to dismiss.

---