■ KAREN GRAVANO, Respondent, v TAKE-TWO INTERACTIVE SOFTWARE, INC., et al., Appellants. LINDSAY LOHAN, Respondent, v TAKE-TWO INTERACTIVE SOFTWARE, INC., et al., Appellants. [37 NYS3d 20]—

Order, Supreme Court, New York County (Joan M. Kenney, J.), entered March 14, 2016, which, to the extent appealed from, denied defendants' motion to dismiss the first cause of action in the Gravano complaint and for sanctions, unanimously modified, on the law, to grant the part of the motion seeking to dismiss, and otherwise affirmed, without costs. Order, same court and Justice, entered March 14, 2016, which denied defendants' motion to dismiss the Lohan complaint and for sanctions, unanimously modified, on the law, to grant the part of the motion seeking to dismiss, and otherwise affirmed, without costs. The Clerk is directed to enter judgment in each action dismissing the complaint.

In these appeals, each plaintiff alleges that defendants violated her right to privacy under New York Civil Rights Law § 51 by misappropriating her likeness for use in the video game "Grand Theft Auto V." This video game takes place in the fictional city "Los Santos," which itself is in a fictional American state of "San Andreas." Players control one of several main characters at various points in the game, engaging in approximately 80 main story missions as well as many optional random events. Plaintiffs allege that during certain optional random events, the player encounters characters that are depictions of plaintiffs.

Gravano alleges that in one of the optional random events in the video game, the character Andrea Bottino is introduced, and that her image, portrait, voice, and likeness are incorporated in this character. Specifically, Gravano argues that the character uses the same phrases she uses; that the character's father mirrors Gravano's own father; that the character's story about moving out west to safe houses mirrors Gravano's fear of being ripped out of her former life and being sent to Nebraska; that the character's story about dealing with the character's

father cooperating with the state government is the same as Gravano dealing with the repercussions of her father's cooperation; and that the character's father not letting the character do a reality show is the same as Gravano's father publicly decrying her doing a reality show.

Lohan alleges that defendants used a look-alike model to evoke Lohan's persona and image. Further, Lohan argues that defendants purposefully used Lohan's bikini, shoulder-length blonde hair, jewelry, cell phone, and "signature 'peace sign' pose" in one image, and used Lohan's likeness in another image by appropriating facial features, body type, physical appearance, hair, hat, sunglasses, jean shorts, and loose white top. Finally, Lohan argues that defendants used her portraits and voice impersonation in a character that is introduced to the player in a "side mission."

Both Gravano's and Lohan's respective causes of action under Civil Rights Law § 51 "must fail because defendants did not use plaintiff[s'] 'name, portrait or picture' " (see Costanza v Seinfeld, 279 AD2d 255, 255 [1st Dept 2001], citing Wojtowicz v Delacorte Press, 43 NY2d 858, 860 [1978]). Despite Gravano's contention that the video game depicts her, defendants never referred to Gravano by name or used her actual name in the video game, never used Gravano herself as an actor for the video game, and never used a photograph of her (see Costanza at 255; see generally Wojtowicz at 860). As to Lohan's claim that an avatar in the video game is she and that her image is used in various images, defendants also never referred to Lohan by name or used her actual name in the video game, never used Lohan herself as an actor for the video game, and never used a photograph of Lohan (see Costanza at 255).

Even if we accept plaintiffs' contentions that the video game depictions are close enough to be considered representations of the respective plaintiffs, plaintiffs' claims should be dismissed because this video game does not fall under the statutory definitions of "advertising" or "trade" (see Costanza at 255, citing Hampton v Guare, 195 AD2d 366, 366 [1st Dept 1993], lv denied 82 NY2d 659 [1993] [stating that "works of fiction and satire do not fall within the narrow scope of the statutory phrases 'advertising' and 'trade' "]; see generally Brown v Entertainment Merchants Assn., 564 US 786, 790 [2011] ["(l)ike the protected books, plays, and movies that preceded them, video games communicate ideas" and deserve First Amendment protection]). This video game's unique story, characters, dialogue, and environment, combined with the player's ability to choose how to proceed in the game, render it a work of fiction and satire.

Further, Lohan's claim that her image was used in advertising materials for the video game should also be dismissed. The images are not of Lohan herself, but merely the avatar in the game that Lohan claims is a depiction of her (*see Costanza* at 255 [the "use of the character in advertising was incidental or ancillary to the permitted use," and therefore was not commercial]).

In view of the foregoing, it is unnecessary to address defendants' remaining grounds for dismissal. Concur—Tom, J.P., Friedman, Richter, Kapnick and Gesmer, JJ.