FAHEY, J.
*391 **782 The primary questions on this appeal are whether an avatar (that is, a graphical representation of a person, in a video game or like media) may constitute a "portrait" within the meaning of Civil Rights Law §§ 50 and 51 and, if so, whether the images in question in the video game central to this matter are recognizable as plaintiff. We conclude a computer generated image may constitute a portrait within the meaning of that law. We also conclude, however, that the subject images are not recognizable as plaintiff, and that the amended complaint, which contains four causes of action for violation of privacy pursuant to Civil Rights Law §§ 50 and 51, was properly dismissed.
Facts [1]
Defendants develop, sell, market, and distribute video games, including the commercially successful "Grand Theft Auto V" (GTAV) game. GTAV is an action-adventure game that is set in a fictional state called "San Andreas" that, according to the vice president for quality assurance of defendant Rockstar Games, Inc. (Rockstar), is intended to evoke Southern California. GTAV's plot occurs in and around a fictional city called "Los Santos," which in turn is intended to evoke Los Angeles. In addition to a 50-hour principal storyline, GTAV contains approximately 100 hours of supplementary game play containing "random events" that a player may choose to explore as he or she proceeds through the game's main plot.
One of those random events is relevant to this appeal. In what defendants characterize as the "Escape Paparazzi" scene in GTAV, the player encounters a character named "Lacey Jonas" hiding from paparazzi in an alley. To the extent the player chooses to help her escape those photographers, Jonas enters the player's automobile before describing herself as an "actress slash singer" and the "voice of a generation." Jonas also characterizes herself as "really famous," and the player's character recognizes "that Jonas has *392 **783 starred in romantic comedies and a cheerleader dance-off movie."
Before the GTAV storyline may proceed to any random events, including the "Escape Paparazzi" scene, the player must view what defendants refer to as "transition screens," which "contain artwork that appears briefly on the user's screen while the game content [loads] into the game console's memory." Two "screens" from GTAV are relevant to this appeal. One such screen contains an image (the "Stop and Frisk" image) of a blonde woman who is clad in denim shorts, a fedora, necklaces, large sunglasses, and a white T-shirt while being frisked by a female police officer. The second such screen contains an image (the "Beach Weather" image) wherein the same blonde woman is depicted wearing a red bikini and bracelets, taking a "selfie" with her cell phone, and displaying the peace sign with one of her hands.
Defendants purportedly released GTAV for the PlayStation and Xbox 360 video game consoles on or about September 17, 2013. Through that release, copies of GTAV were distributed to and sold by numerous domestic and foreign retailers, including retailers within New York State. To advertise the game prior to its release, defendants allegedly used the "Stop and Frisk" and "Beach Weather" images on various promotional materials, including billboards. Defendants also used the "Beach Weather" image on the packaging for the GTAV, and both the "Beach Weather" and "Stop and Frisk" images on video game discs.
According to plaintiff, who describes herself as a figure "recognized in social media" and as "a celebrity actor... who has been regularly depicted in television, tabloids, blogs, movies, fashion related magazines, talk shows, and theatre for the past 15 ... years," the Jonas character is her "look-a-like" and misappropriates her "portrait[ ] and voice." Plaintiff also believes that the "Stop and Frisk" and "Beach Weather" images each cumulatively evoke her "images, portrait[,] and persona."
Inasmuch as she did not provide written consent for the use of what she characterizes as her portrait and her voice in GTAV, plaintiff commenced this action seeking, among other things, compensatory and punitive damages for invasion of privacy in violation of Civil Rights Law §§ 50 and 51. In lieu of answering, defendants moved to dismiss the amended complaint for failure to state a cause of action (see CPLR 3211[a][7] ) and based on, among other things, documentary evidence (see CPLR 3211[a][1] ). Supreme Court denied the part of the motion seeking dismissal of the amended complaint ( 2016 N.Y. Slip Op. 32866[U], 2016 WL 1057026 [2016] ) but, on appeal, the Appellate Division modified that order and granted that application to the extent it sought dismissal of the operative pleading ( 142 A.D.3d 776, 777, 37 N.Y.S.3d 20 [1st Dept. 2016] ). We subsequently granted plaintiff leave to appeal to this Court (28 N.Y.3d 915, 2017 WL 628691, 2017 WL 628761 [2017] ), and we now affirm the Appellate Division order insofar as appealed from.
The Statutory Right of Privacy
"Historically, New York common law did not recognize a cause of action for invasion of privacy" ( Shields v. Gross, 58 N.Y.2d 338, 344, 461 N.Y.S.2d 254, 448 N.E.2d 108 [1983] ). That point was articulated in Roberson v. Rochester Folding Box Co., 171 N.Y. 538, 64 N.E. 442, 64 N.E. 442 (1902), which arose from the unauthorized use of approximately 25,000 reproductions of a photograph of the infant plaintiff to promote the defendant's flour (see id. at 542, 64 N.E. 442 ). In dismissing the complaint in that matter, which sounded in the breach of a "so-called right of privacy" ( id="p784" href="#p784" data-label="784" data-citation-index="2" class="page-label">**784 *393 id. at 544, 64 N.E. 442 ), we "broadly denied the existence of such a cause of action under New York common law" ( Arrington v. New York Times Co., 55 N.Y.2d 433, 439, 449 N.Y.S.2d 941, 434 N.E.2d 1319 [1982] ; see Roberson, 171 N.Y. at 556, 64 N.E. 442 ).
In response to Roberson ,171 N.Y. 538, 64 N.E. 442, the legislature codified "a limited statutory right of privacy" in article 5 of the Civil Rights Law ( Messenger v. Gruner + Jahr Print. & Publ., 94 N.Y.2d 436, 441, 706 N.Y.S.2d 52, 727 N.E.2d 549 [2000], resolved issue certified 208 F.3d 122 [2d Cir. 2000], cert denied 531 U.S. 818, 121 S.Ct. 57, 148 L.Ed.2d 25 [2000] ). Civil Rights Law § 50"makes it a misdemeanor to use a living person's 'name, portrait or picture' for advertising or trade purposes 'without having first obtained the written consent of such person, or if a minor of his or her parent or guardian' " ( Messenger, 94 N.Y.2d at 441, 706 N.Y.S.2d 52, 727 N.E.2d 549, quoting Civil Rights Law § 50 ). Civil Rights Law § 51, as amended in 1921 (L 1921, ch 501, § 1), "adds the civil damages teeth" ( Messenger, 94 N.Y.2d at 449, 706 N.Y.S.2d 52, 727 N.E.2d 549 [Bellacosa, J., dissenting] ) and "makes a violation of section 50 actionable in a civil suit" ( Arrington, 55 N.Y.2d at 438 n 1, 449 N.Y.S.2d 941, 434 N.E.2d 1319 ). As relevant here, Civil Rights Law § 51 specifically provides that
"[a]ny person whose name, portrait, picture or voice is used within this state for advertising purposes or for the purposes of trade without the written consent first obtained as...provided [in Civil Rights Law § 50 ] may maintain an equitable action ... to prevent and restrain the use thereof; and may also sue and recover damages for any injuries sustained by reason of such use...."
In point of fact, Civil Rights Law §§ 50 and 51"were drafted narrowly to encompass only the commercial use of an individual's name or likeness and no more" ( Arrington, 55 N.Y.2d at 439, 449 N.Y.S.2d 941, 434 N.E.2d 1319 ). Based on that slender legislative intent, courts determining questions of the application of Civil Rights Law § 51 have limited the remedial use of that statute. By way of example, we have deemed non-commercial-and therefore non-actionable-the use of a person's likeness with respect to "newsworthy events or matters of public interest" ( Howell v. New York Post Co., 81 N.Y.2d 115, 123, 596 N.Y.S.2d 350, 612 N.E.2d 699 [1993] ; see Finger v. Omni Publs. Intl., 77 N.Y.2d 138, 141-142, 564 N.Y.S.2d 1014, 566 N.E.2d 141 [1990] ; Stephano v. News Group Publs., 64 N.Y.2d 174, 184, 485 N.Y.S.2d 220, 474 N.E.2d 580 [1984] ), and other courts have explicitly concluded that works of humor (see Onassis v. Christian Dior-New York, Inc., 122 Misc.2d 603, 614, 472 N.Y.S.2d 254 [Sup. C.t, New York County 1984], affd 110 A.D.2d 1095, 488 N.Y.S.2d 943 [1st Dept. 1985] ), art (see Altbach v. Kulon, 302 A.D.2d 655, 658, 754 N.Y.S.2d 709 [3d Dept. 2003] ), fiction, and satire (see Hampton v. Guare, 195 A.D.2d 366, 366, 600 N.Y.S.2d 57 [1st Dept. 1993], lv denied 82 N.Y.2d 659, 605 N.Y.S.2d 5, 625 N.E.2d 590 [1993] ; see also University of Notre Dame Du Lac v. Twentieth Century-Fox Film Corp., 22 A.D.2d 452, 256 N.Y.S.2d 301 [1st Dept. 1965], affd on op below 15 N.Y.2d 940, 259 N.Y.S.2d 832, 207 N.E.2d 508 [1965] ) do not come within the ambit of section 51 (see generally Messenger, 94 N.Y.2d at 446, 706 N.Y.S.2d 52, 727 N.E.2d 549 ). Indeed, at bottom, courts have cabined section 51" 'to avoid any conflict with the free dissemination of thoughts, ideas, newsworthy events, and matters of public interest' guaranteed by the First Amendment" ( Ann-Margret v. High Soc. Magazine, Inc., 498 F.Supp. 401, 404 [S.D. N.Y.1980], quoting **785 *394 Time, Inc. v. Hill, 385 U.S. 374, 382, 87 S.Ct. 534, 17 L.Ed.2d 456 [1967] ; see Howell, 81 N.Y.2d at 123, 596 N.Y.S.2d 350, 612 N.E.2d 699 ) because "freedom of speech and the press ... transcends the right to privacy" ( Namath v. Sports Illustrated, 80 Misc.2d 531, 535, 363 N.Y.S.2d 276 [Sup. Ct., New York County 1975], affd 48 A.D.2d 487, 371 N.Y.S.2d 10 [1st Dept. 1975], affd 39 N.Y.2d 897, 386 N.Y.S.2d 397, 352 N.E.2d 584 [1976] ).
Analysis
Turning to the merits, based on the language of the statute, "[t]o prevail on a ... right to privacy claim pursuant to [ Civil Rights Law § 51 ], a plaintiff must prove: (1) use of plaintiff's name, portrait, picture or voice (2) for advertising purposes or for the purposes of trade (3) without consent and (4) within the state of New York" ( Lohan v. Perez, 924 F.Supp.2d 447, 454 [E.D. N.Y.2013] [internal quotation marks omitted] ). Our review turns on the "portrait" element of that statute and, as an initial matter, we conclude that an avatar (that is, a graphical representation of a person, in a video game or like media) may constitute a "portrait" within the meaning of article 5 of the Civil Rights Law.
The affirmative answer to that "avatar" inquiry requires us to proceed to the issue whether the images in question in GTAV are recognizable as plaintiff. Applying the settled rules applicable to this motion to dismiss (see Leon v. Martinez, 84 N.Y.2d 83, 87-88, 614 N.Y.S.2d 972, 638 N.E.2d 511 [1994] ), we conclude that the amended complaint was properly dismissed because the artistic renderings are indistinct, satirical representations of the style, look, and persona of a modern, beach-going young woman that are not reasonably identifiable as plaintiff (see Cohen v. Herbal Concepts, 63 N.Y.2d 379, 384, 482 N.Y.S.2d 457, 472 N.E.2d 307 [1984] ). We address each of those controversies separately for ease of review.
The Avatar Question
To be sure, " '[t]he language of a statute is generally construed according to its natural and most obvious sense ... in accordance with its ordinary and accepted meaning, unless the Legislature by definition or from the rest of the context of the statute provides a special meaning' " ( Samiento v. World Yacht Inc., 10 N.Y.3d 70, 77-78, 854 N.Y.S.2d 83, 883 N.E.2d 990 [2008], quoting McKinney's Cons Laws of NY, Book 1, Statutes § 94, at 191-194 [1971 ed] ). Civil Rights Law § 51 was enacted in 1903 (see L 1903, ch 132, § 2), at which time digital technology was uninvented. To that end, a reasonable mind could question how the term "portrait," as incorporated in the original and present forms of Civil Rights Law § 51, could embrace the imagery in question.
The appropriate course, however, is to employ the theory of statutory construction that general terms encompass future developments and technological advancements. In the context of statutory construction, this Court has observed that "general legislative enactments are mindful of the growth and increasing needs of society, and they should be construed to encourage, rather than to embarrass[,] the inventive and progressive tendency of the people" ( Hudson Riv. Tel. Co. v. Watervliet Turnpike & R. Co. , 135 N.Y. 393, 403-404, 32 N.E. 148 [1892] ; see McKinney's Cons Laws of NY, Book 1, Statutes, § 93 ["statutes framed in general terms ordinarily apply to cases and subjects within their terms subsequently arising"] ).
Operating under that standard, we conclude that an avatar may constitute a "portrait" within the meaning of Civil Rights Law article 5. We have held that the term "portrait" embraces both photographic and artistic reproductions of a *395 person's **786 likeness (see Cohen, 63 N.Y.2d at 384, 482 N.Y.S.2d 457, 472 N.E.2d 307 ; see also Binns v. Vitagraph Co. of Am., 210 N.Y. 51, 57, 103 N.E. 1108 [1913] ["A picture within the meaning of (Civil Rights Law article 5) is not necessarily a photograph of the living person, but includes any representation of such person"]; see generally Young v. Greneker Studios, 175 Misc. 1027, 1028, 26 N.Y.S.2d 357 [Sup. Ct., New York County 1941] ["The words 'picture' and 'portrait' are broad enough to include any representation, whether by photograph, painting or sculpture"] ). Federal courts share the view that "any recognizable likeness, not just an actual photograph, may qualify as a 'portrait or picture' " ( Burck v. Mars, Inc., 571 F.Supp.2d 446, 451 [S.D. N.Y.2008], quoting Allen v. National Video, Inc., 610 F.Supp. 612, 622 [S.D. N.Y.1985] ), having ruled that a composite photograph and drawing ( Ali v. Playgirl, Inc., 447 F.Supp. 723, 726 [S.D. N.Y.1978] ) and a cartoon ( Allen, 610 F.Supp. at 622 ) may trigger the protections of Civil Rights Law article 5. In view of the proliferation of information technology and digital communication, we conclude that a graphical representation in a video game or like media may constitute a "portrait" within the meaning of the Civil Rights Law.
The Portrait Question
Even applying the deferential rules germane to a motion to dismiss, we nevertheless conclude that the images in question do not constitute a "portrait" of plaintiff, and that the amended complaint therefore was properly dismissed (see generally Leon, 84 N.Y.2d at 87-88, 614 N.Y.S.2d 972, 638 N.E.2d 511 ).
"Manifestly, there can be no appropriation of [a] plaintiff's [likeness] for commercial purposes if he or she is not recognizable from the [image in question]" ( Cohen, 63 N.Y.2d at 384, 482 N.Y.S.2d 457, 472 N.E.2d 307 ). It follows that "a privacy action [cannot] be sustained ... because of the nonconsensual use of a [representation] without identifying features" ( id. ). Whether an image or avatar is a "portrait" because it presents a "recognizable likeness" typically is question for a trier of fact ( id. ). Nevertheless, before a factfinder can decide that question, there must be a basis for it to conclude that the person depicted "is capable of being identified from the advertisement alone" as plaintiff ( id. ). That legal determination will depend on the court's evaluation of the "quality and quantity of the identifiable characteristics" present in the purported portrait ( id. ).
Here, the Jonas character simply is not recognizable as plaintiff inasmuch as it merely is a generic artistic depiction of a "twenty something" woman without any particular identifying physical characteristics. The analysis with respect to the Beach Weather and Stop and Frisk illustrations is the same. Those artistic renderings are indistinct, satirical representations of the style, look, and persona of a modern, beach-going young woman. It is undisputed that defendants did not refer to plaintiff in GTAV, did not use her name in GTAV, and did not use a photograph of her in that game (see 142 AD3d at 776-777, 37 N.Y.S.3d 20, citing Costanza v. Seinfeld, 279 A.D.2d 255, 255, 719 N.Y.S.2d 29 [1st Dept. 2001] ). Moreover, the ambiguous representations in question are nothing more than cultural comment that is not recognizable as plaintiff and therefore is not actionable under Civil Rights Law article 5 (see generally Cohen, 63 N.Y.2d at 384, 482 N.Y.S.2d 457, 472 N.E.2d 307 ).[2]
*396 **787 In view of our determination, we do not address plaintiff's remaining contention with respect to the "advertising" and "trade" elements of Civil Rights Law § 51. We also do not address the alternative contention of defendant Rockstar North in support of dismissal of the amended complaint as against it.
Accordingly, the order of the Appellate Division, insofar as appealed from, should be affirmed, with costs.
Order, insofar as appealed from, affirmed, with costs.
Chief Judge DiFiore and Judges Rivera, Stein, Garcia and Feinman concur. Judge Wilson took no part.

Inasmuch as this appeal arises from defendants' motion to dismiss the amended complaint, we must, among other things, "accept as true the facts alleged in the [amended] complaint and any submissions in opposition to the dismissal [application]" (511 W. 232nd Owners Corp. v. Jennifer Realty Co., 98 N.Y.2d 144, 151-152, 746 N.Y.S.2d 131, 773 N.E.2d 496 [2002] ).

As noted, plaintiff also alleges in the amended complaint that, through the dialogue of GTAV's Jonas character, defendants have misappropriated her voice. Defendants submitted an affidavit asserting that her voice was not used in GTAV. In response, plaintiff did not dispute this fact but, rather, claimed that GTAV incorporated her "voice resemblance and accent." Before this Court, plaintiff again implicitly concedes that GTAV did not use her "voice." Accordingly, the amended complaint was also properly dismissed with respect to that claim.