OPINION OF THE COURT
Herman Cahn, J.
Defendants Home Box Office, Inc. (HBO) and MGM/UA Home Entertainment Group, Inc. (MGM/UA) move, pursuant to CPLR 3211 (a) (2), for dismissal of the first, second, fifth, sixth, seventh, ninth and eleventh causes of action. Additionally, said defendants move, pursuant to CPLR 3211 (a) (7), for dismissal of the third, fourth, eighth and tenth causes of action.
Plaintiffs, or their predecessors in interest, were members of "girl groups” — popular music performers who reached the height of their fame in the 1960’s, the Supremes being one of the most famous examples of the genre. In 1983, defendant Delilah Films, Inc. produced a film — "Girl Groups — The Story of a Sound.” That film, a retrospective of the era, contains previously published film footage of these groups performing, interspersed with reminiscences of individuals associated with the production of the groups’ recordings. Said film was copyrighted by its makers. The prerecorded performances consist of some of the girl groups performing their "hit” songs. These performances involve choreographic arrangements, whereby the singers appear to be singing, but are not actually doing so. The audio portions are supplied by phonograph records or prerecorded vocal tracks. The purpose of this is to foster the illusion that live performers are in fact singing. This process is commonly referred to as "lip synch” and was in frequent use throughout that era.
In 1984 and 1985, HBO and MGM/UA advertised and showed the film on cable television. In addition, they marketed, advertised and distributed a video of the show for the home video market. It is alleged that defendants pursued these commercial activities without first obtaining the consent of the plaintiffs for use of their performances and images in violation of Civil Rights Law §§ 50 and 51, and without compensating the plaintiffs for same. Plaintiffs filed this suit alleging actions sounding in misappropriation (first and fifth causes of action), unjust enrichment (sixth cause of action), and requesting punitive damages (seventh cause of action), injunctive relief (ninth cause of action) and for an accounting (eleventh cause of action). Defendants move to dismiss these *376 causes of action asserting that the gravamen of plaintiffs’ allegations is copyright infringement and therefore, pursuant to the Copyright Act of 1976, 17 USC § 301 (the Act), State law is preempted and, pursuant to the Judicial Code, 28 USC § 1338 (a), exclusive jurisdiction for such claims lies with the United States District Courts.
In 1976 Congress revised the copyright laws. The Act now specifically provides for preemption of all State rights equivalent to those within the scope of the Federal copyright law (Mayer v Wedgwood & Sons, 601 F Supp 1523, 1531 [SD NY 1985]). All causes of action arising after January 1, 1978 are subsumed within the Federal law (17 USC § 301 [b] [2]), providing that the work is of the type protected by the Federal copyright laws (17 USC § 102 [a], [b]).
Plaintiffs allege that because the sound recordings used in the film predate 1972, their claim is exempt from Federal copyright law under 17 USC § 301 (c) which provides: "With respect to sound recordings fixed before February 15, 1972, any rights or remedies under the common law or statutes of any State shall not be annulled or limited by this title until February 15, 2047” (emphasis added).
Plaintiffs concede that the prerecorded film is owned by various third parties who may or may not have copyrighted said film. They assert that if the court finds the copyright law controlling, and grants that portion of defendants’ motion, then plaintiffs will be without a remedy. However, the plaintiffs cannot, at this late date, obtain copyright protection for old records and vocal tracks and old film clips containing their performances, all of which belong to others. Though the court sympathizes with plaintiffs, who may or may not have been justly compensated for their original work, the court is constrained to follow the Federal law.
The court has viewed the video recording at issue. The film clips fall within the ambit of the intended subject matter of copyright (17 USC § 102 [a] [6]), to wit: motion pictures and other audiovisual works. Though plaintiffs seek to exempt their performances from the copyright law by calling them "sound recordings fixed before February 15, 1972”, the court finds this attempt unpersuasive. Though sound recordings are used in conjunction with the video portions, the performance, taken in its entirely, is properly defined as "audiovisual works” as set forth in 17 USC § 102 (a) (6), not as "sound recordings” (17 USC § 102 [a] [7]). The sound portion cannot be *377 separated from the visual portion, merely to accommodate plaintiffs’ assertion that they are entitled to an exemption based on 17 USC § 301 (c), which exemption excludes sound recordings made prior to 1972, from the reach of the copyright law.
Therefore, the court finds that two conditions of preemption under section 301 have been met, namely, that the cause of action was commenced after the 1978 cutoff date (and in fact only arose after 1978), and the film at issue is properly the subject matter of copyright.
The final consideration in deciding whether plaintiffs’ claims are preempted by the Federal copyright law concerns the nature of the rights asserted by plaintiffs. As stated by the Court of Appeals in Editorial Photocolor Archives v Granger Collection (61 NY2d 517, 522 [1984]): "The Copyright Act of 1976 * * * worked a fundamental change in this Nation’s copyright laws. After the effective date of that act, all legal and equitable rights equivalent to copyrights are governed exclusively by that act. States may not, by statute or common law, provide equivalent rights, and State courts are divested of jurisdiction to consider claims to enforce those rights.”
The statute specifically preserved those State law rights that are nonequivalent (see, 17 USC § 301 [b]). However, plaintiffs may not "by miscasting their causes of action, secure the equivalent of copyright protection under guise of State law” (Editorial Photocolor Archives v Granger Collection, supra, at 523).
The test for such exemption is the existence of an "extra element” which "changes the nature of the action so that it is qualitatively different from a copyright infringement claim”. (Mayer v Wedgwood & Sons, supra, 601 F Supp, at 1535.) Here, labeling the causes of action as misappropriation, unjust enrichment, punitive damages, and requesting injunctive relief and an accounting does not alter the nature of these actions, which is to recover for the " 'performance, distribution or display’ ” of plaintiffs’ performances (Mayer v Wedgwood & Sons, supra, at 1535). Therefore, because the first, fifth, sixth, seventh, ninth and eleventh causes of action sound in copyright, jurisdiction lies exclusively with the Federal courts. Accordingly they are dismissed.
The second cause of action alleges that plaintiffs maintain valuable rights of publicity in their names and performances, and that those rights were misappropriated by defendants. *378 The Court of Appeals held in Stephano v News Group Publs. (64 NY2d 174 [1984]) that there is no independent common-law right of publicity, and whatever privacy rights exist are encompassed by Civil Rights Law §§ 50 and 51. Though an effort is currently underway to create a statutory right similar to a right of publicity, which right would prevent commercial exploitation of deceased celebrities without permission of their successors in interest, absent the necessary legislative mandate, the court cannot recognize the publicity rights asserted by plaintiffs in this cause of action.
A different result is obtained as to the third, eighth and tenth causes of action, alleging violations of New York Civil Rights Law §§ 50 and 51. New York Civil Rights Law § 50 states: "A person, firm or corporation that uses for advertising purposes, or for the purposes of trade, the name, portrait or picture of any living person without having first obtained the written consent of such person * * * is guilty of a misdemeanor” (emphasis added).
Legislative history of 17 USC § 301 affirms that among the rights preserved by State law are actions pertaining to invasion of privacy (Mayer v Wedgwood & Sons, supra, at 1533). Sections 50 and 51 of the Civil Rights Law were enacted in order to establish a statutory right to privacy and to afford injunctive relief (Stephano v News Group Publs., supra). Such right has been repeatedly held to be solely encompassed by the above-mentioned statutes (Arrington v New York Times Co., 55 NY2d 433 [1982]). These sections were narrowly drawn "to encompass only the commercial use of an individual’s name or likeness and no more” (Arrington v New York Times Co., supra, at 439). The courts have interpreted the statutes to protect an individual’s personality from misappropriation in commercial and advertising spheres only, in order to counterbalance the competing interests of free speech and a free press. Where the challenged use of a name or likeness, by the media, is of public interest and is considered newsworthy, such items are "protected by the First Amendment and [are] not considered a use for purposes of trade within the ambit of the Civil Rights Law” (Davis v High Socy. Mag., 90 AD2d 374, 379 [2d Dept 1982]). Due to these considerations, plaintiffs’ only possible surviving claims arise through defendants’ alleged use of plaintiffs’ likenesses for marketing or advertising purposes.
However, as to those plaintiffs who are successors in interest, they have no cause of action under Civil Rights Law §§ 50, *379 51, as the statutory rights created by said law do not survive death (Smith v Long Is. Jewish-Hillside Med. Center, 118 AD2d 553 [2d Dept 1986]; Matter of Antonetty v Cuomo, 131 Misc 2d 1041 [Sup Ct, Bronx County 1986]). Whatever rights that belonged to Jean King, Georgeanna Tillman Gordon, Addie Harris McFadden, Sherman Games and Maryann Ganser were extinguished at their deaths. Accordingly, the invasion of privacy causes of action interposed on their deaths. Accordingly, the invasion of privacy causes of action interposed on their behalf are dismissed.
Defendants assert that the use of the video and photographs of the performers is protected by the First Amendment privilege afforded to "public interest” and "newsworthy” items, and thus are exempt from the scope of Civil Rights Law § 50. (Stephano v News Group Publs., supra.) However, the mere assertion of the privilege will not forestall inquiry into the issue of whether defendants have merely identified the video as newsworthy as a "pretext for usurping a creative effort” (Harper & Row, Publs. v Nation Enters., 723 F2d 195, 207 [2d Cir 1983], revd on other grounds 471 US 539 [1985]; Midler v Ford Motor Co., 849 F2d 460, 462 [9th Cir 1988]). Whether or not defendants utilized plaintiffs’ likeness for trade purposes, in contravention of the Civil Rights Law, must await resolution at a plenary trial.
Similarly, that part of defendants’ motion which seeks dismissal of the fourth cause of action, alleging that plaintiffs, as third-party beneficiaries, have been damaged by defendants’ breach of contract agreements under the Screen Actors Guild and/or the American Federation of Television and Radio Artist, is denied. The affidavits of Peter Towe and Chuck Rubin clarify the nature of the contracts and allege that defendants were parties thereto. Thus, defendants have been sufficiently apprised of the plaintiffs’ claims and the cause of action will not be dismissed. (See generally, Foley v D'Agostino, 21 AD2d 60 [1st Dept 1964].)
Accordingly, defendants’ motion to dismiss the first, fifth, sixth, seventh, ninth and eleventh causes of action is granted without prejudice to a Federal copyright infringement action. The second cause of action is dismissed for failure to state a cause of action. Defendants’ motion to dismiss the third, eighth and tenth causes of action is denied, except as to those plaintiffs who are successors in interest to decedents, as to whom it is granted.