Martinez v New York City Tr. Auth. (2022 NY Slip Op 00252)





Martinez v New York City Tr. Auth.


2022 NY Slip Op 00252


Decided on January 13, 2022


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: January 13, 2022
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Judith Gische
Troy K. Webber Angela M. Mazzarelli Peter H. Moulton Bahaati E. Pitt


Index No. 153421/17 Appeal No. 14415-14416 Case No. 2020-03010 2020-00342 

[*1]Armando Antonio Martinez, Plaintiff-Respondent,
v
New York City Transit Authority et al., Defendants-Appellants.
Armando Antonio Martinez, Plaintiff-Respondent-Appellant,
v
New York City Transit Authority et al., Defendants-Appellants-Respondents.



Defendants appeal from the order of the Supreme Court, New York County (Suzanne J. Adams, J.), entered on or about May 1, 2020, which granted plaintiff's motion for summary judgment as to liability and denied defendants' motion for summary judgment dismissing the complaint. Defendants also appeal and plaintiff cross-appeals from the order, same court (Lisa A. Sokoloff, J.), entered on or about September 11, 2019, which directed defendants to produce certain discovery.




Lawrence Heisler, Brooklyn (Harriet Wong and Anna J. Ervolina of counsel), for appellants/appellants-respondents.
Pollack, Pollack, Isaac & DeCicco LLP, New York (Brian J. Isaac of counsel), and Lipsig Shapey, Manus & Moverman, P.C., New York (Alan M. Shapey of counsel), for respondent/respondent-appellant.



Mazzarelli, J.


Plaintiff was struck by a number 6 subway train after having fallen onto the tracks inside the Spring Street station. The train was traveling at a speed of 25 miles per hour when it entered the station. The operator applied the emergency brake when he first noticed plaintiff lying on the track approximately 50 feet away, but the train did not stop in time to avoid hitting plaintiff. These facts are nearly identical to those of an earlier accident, which came before this Court in Pedraza v New York City Tr. Auth. (__ AD3d __ [1st Dept 2021][decided herewith]). In Pedraza, the plaintiff was also struck by a southbound 6 train after falling onto the tracks inside the Spring Street station. His expert witness, Nicholas Bellizzi, testified at trial that when trains enter the Spring Street station from the north the track curves sharply to the right, limiting the distance a train operator can see. Bellizzi referred to charts published by the TA regarding the distance a train will travel after the operator, while moving at a given speed, applies the emergency brake. Bellizzi opined in Pedraza that, at 25 mph, the speed the train was traveling when the operator was first able to notice the plaintiff's presence on the tracks, it was impossible for the train to stop in time to avoid the collision. Bellizzi concluded that if the TA, instead of permitting trains to continue into the station at the same speed as they travel in the tunnel (as fast as 30 mph), had reduced the speed limit in the Spring Street station to 15 mph to account for the curve, the plaintiff would not have been struck.
A jury in Pedraza found that the TA was negligent in failing to limit train speeds to 15 mph when entering the Spring Street station from the north. Plaintiff in this case moved for partial summary judgment on liability based on that verdict, asserting that collateral estoppel precluded the TA from contesting the question whether it unreasonably allowed trains to exceed that speed in the Spring Street station. The motion court granted plaintiff's motion, finding that the circumstances of his accident were "virtually identical" to those in Pedraza, and that in Pedraza the TA "had a [*2]fair opportunity to litigate [the] issue." However, this Court has since reversed the judgment in Pedraza. We found that, while plaintiff made out a prima facie case of negligence, the trial court unfairly restricted the scope of the witnesses that the TA proffered to testify in support of its position that its decision-making as to subway speeds was shielded from judicial review by the doctrine of qualified governmental immunity. Two of those witnesses were officials with the TA who would have explained to the jury that the TA's Speed Policy Committee studies appropriate speeds in the subway system and had concluded that reducing speeds when entering stations would have a deleterious effect on the subway system as a whole. The TA's proposed expert, Kenneth Korach, a consultant to mass transit agencies throughout the United States, was prepared to testify that there was no industry standard requiring reduction in speed of entry into a station in the manner claimed by plaintiff and that he was "unaware of any operational basis, scientific evidence, or statistical analysis which suggests that a 10 or 15 MPH speed limit for trains entering stations that are located on or prior to curves in the track is safer than [the TA]'s current practice."
The trial court in Pedraza, in ruling on a motion in limine brought by the plaintiff, ruled that the TA witnesses would not be permitted to testify about the impact a reduction to the speed limit inside the Spring Street station would have on the subway system as a whole, and precluded Korach from testifying about his expert knowledge of industry standards across the country regarding the issue of speed limits on curved tracks. This Court disagreed, finding that its own precedent regarding whether the TA had qualified immunity for decisions it made about subway speed policy considered "universally accepted rapid transit system operating practice" a relevant factor (quoting DeLeon v New York City Tr. Auth., 305 AD2d 227, 228 [1st Dept 2003]). This Court further held that it was improper to restrict the TA's witnesses to testifying only about the effect that slower speeds would have on the Lexington Avenue Line, as opposed to the entire subway system. In this regard, the Pedraza Court cited Chase v New York City Tr. Auth. (288 AD2d 422 [2d Dept 2001], lv denied 98 NY2d 611 [2002]), in which the Second Department found that qualified immunity shielded the TA's decisions regarding train speeds when entering subway stations, since those decisions were "reasonably based, taking into account both safety concerns and the efficient running of a transportation system which serves millions of passengers every year" (288 AD2d at 424 [internal quotation marks omitted; emphasis added]). Based on these errors by the trial court in Pedraza, we remanded the case to Supreme Court for a new trial.
The doctrine of collateral estoppel "precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised [*3]in a prior action or proceeding and decided against that party or those in privity, whether or not the tribunals or causes of action are the same" (Ryan v New York Tel. Co., 62 NY2d 494, 500 [1984]). "The doctrine applies if the issue in the second action is identical to an issue which was raised, necessarily decided and material in the first action, and the plaintiff had a full and fair opportunity to litigate the issue in an earlier action" (Parker v Blauvelt Volunteer Fire Co., 93 NY2d 343, 349 [1999]). Here, the doctrine cannot apply because, as stated, this Court reversed the judgment in Pedraza. In any event, and putting aside the issue of whether the circumstances of the accidents in Pedraza and Martinez were truly identical, collateral estoppel is inapplicable because we held in Pedraza that the trial court unfairly restricted the scope of the testimony that the TA's witnesses were prepared to give. Because this Court found that the TA was deprived of its ability to fully present evidence of its entitlement to qualified immunity, we cannot say that it had a full and fair opportunity to litigate the issue. Accordingly, the motion court should not have granted summary judgment to plaintiff on the basis of collateral estoppel.
At the same time, we find that the TA was not entitled to pretrial dismissal of the complaint on the basis of qualified immunity. As noted above, and in Pedraza, this Court has held that the TA's decisions concerning the speed of entering stations are entitled to qualified immunity (see DeLeon, 305 AD2d 227). The Second Department has similarly held that the TA's speed policy is a planning decision to which the qualified immunity doctrine applies (see Chase v New York City Tr. Auth., 288 AD2d 422; Stevens v New York City Tr. Auth., 288 AD2d 460 [2d Dept 2001]). Plaintiff argues that these cases are irrelevant in light of Turturro v City of New York (28 NY3d 469 [2016]). In that case, the Court of Appeals emphasized that a governmental body claiming qualified immunity based on its having studied a particular condition alleged to have caused injury must establish that the study was indeed specifically tailored to the issue in question. Thus, plaintiff asserts, it is of no moment that this Court and others have upheld qualified immunity in cases involving subway speeds when entering stations, because those cases did not involve stations with sharp curves at their entrances, like the Spring Street station.
In support of its motion, the TA submitted affidavits by the same TA employee witnesses it proffered in Pedraza. The witnesses referred to studies that the TA's Speed Policy Committee had undertaken years before to set appropriate subway speeds throughout the system. While the witnesses alluded to the fact that those studies took into consideration areas in the system that had curved sections of track, it cannot be concluded on this record that the studies involved the specificity seemingly required by Turturro. Accordingly[*4], it would be premature at this stage to hold as a matter of law that the studies entitle the TA to qualified immunity here.
As we did in Pedraza, we reject the TA's claim that it is entitled to governmental function immunity. That doctrine holds that discretionary acts taken by a municipality in its governmental, as opposed to proprietary, capacity are entitled to broad judicial deference (see Valdez v City of New York, 18 NY3d 69, 75-76 [2011]). However, as we held in Pedraza, since transportation is traditionally operated by private enterprise, it constitutes a proprietary function when performed by a governmental entity (such as the TA) (see Crosland v New York City Tr. Auth., 110 AD2d 148 [2d Dept 1985], affd 68 NY2d 165 [1986]). Nor is the TA entitled on this record to judgment as a matter of law under common law liability precepts. Its expert witness did point to industry standards regarding speed regulation in curved stations; however, plaintiff's expert emphasized the severity of the curve at the Spring Street station, which was sufficient to create an issue of fact as to the reasonableness of the lack of speed restrictions inside that particular station.
Finally, it was within the motion court's discretion to require the TA to produce a witness with knowledge of speed policy, notwithstanding that plaintiff had filed his note of issue after moving to strike the TA's answer. Ordinarily a party will be deemed to have waived its right to further discovery when it files the note of issue and certificate of readiness representing that all discovery has been completed (see Hui-Lin Wu v City of New York, 183 AD3d 411 [1st Dept 2020]). While plaintiff's note of issue stated unequivocally several times that discovery was complete, he filed the note with a certificate of compliance in which he reserved his rights to the discovery sought (compare Stephano v News Group Publs. (64 NY2d 174][1984][plaintiff waived right to further discovery by certifying that case was ready for trial and otherwise demonstrating that he was content to proceed with the evidence he already had). A prior order directed plaintiff to file his note of issue, and while plaintiff's moving to extend his time to file would have been the better practice, it cannot be said that the discovery was waived.
The motion court also providently exercised its discretion in directing the TA to produce a witness with knowledge of its speed policy. As discussed above, the application of qualified immunity has not been resolved in this case, and the testimony is relevant to whether the TA is indeed entitled to rely on the doctrine. It was also proper for the court to order the TA to produce the documents that the witness would presumably rely on in giving such testimony, notwithstanding that plaintiff did not explicitly include them in his motion to strike.
Accordingly, the order of the Supreme Court, New York County (Suzanne J. Adams, J.), entered on or about May 1, 2020, which, to the [*5]extent appealed from as limited by the briefs, granted plaintiff's motion for summary judgment as to liability and denied defendants' motion for summary judgment dismissing the complaint, should be modified, on the law, to deny plaintiff's motion, and otherwise affirmed, without costs. The appeal from the order, same court (Lisa A. Sokoloff, J.), entered on or about September 11, 2019, which directed defendants to produce certain discovery, should be affirmed, without costs.
Order, Supreme Court, New York County (Suzanne J. Adams, J.), entered on or about May 1, 2020, which granted plaintiff's motion for summary judgment as to liability and denied defendants' motion for summary judgment dismissing the complaint, modified, on the law, to deny plaintiff's motion, and otherwise affirmed, without costs. The appeal and cross appeal from the order, same court (Lisa A. Sokoloff, J.), entered on or about September 11, 2019, which, directed defendants to produce certain discovery, affirmed, without costs.
Opinion by Mazzarelli, J. All concur.
Gische, J.P., Webber, Mazzarelli, Moulton, Pitt, JJ.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: January 13, 2022